In the matter of the appeal from the decree of the Orphans Court of the County of Passaic, admitting to probate a certain writing as the last will and testament of CONRAD WHITE, deceased.

[Decided June 5th, 1941.]

*Mr. Abraham I. Feltman (Mr. Peter J. McGinnis, of counsel), proctor for the appellant.*

*Messrs. Frankel & Frankel (Mr. Leopold Frankel, of counsel), proctors for the respondent.*

LEWIS, VICE-ORDINARY.

This is an appeal from a decree of the Orphans Court granting probate to the will of Conrad White, deceased. The will was executed on September 10th, 1935, following the death of the wife of testator on July 31st, 1935. He died by his own hand on the 23d day of July, 1936, at the age of 70, leaving him surviving a daughter, Rita A. Laube, and two grandchildren, Edwin G. White, age twenty-five, and Carol Conrad White, age ten years, children of a deceased son, Edwin J. White, who had died in 1931. The will left the great bulk of the estate, amounting to some $23,000, to the daughter, the only other bequest being one of $50 to the older grandson, Edwin G. White, and $150 to the younger grandson.

The will was contested by the older grandson, Edwin G. White, on the grounds of lack of testamentary capacity, fraud and undue influence, and lack of due execution. The ground of fraud and undue influence is the only one that is seriously pressed in either the court below or here. During the pend-

ency of the final hearing in this court, Edwin G. White himself committed suicide on August 2d, 1939. His mother, Rhoda White, qualified as administratrix and had prosecuted this appeal.

It is the contention of appellant that the daughter, Rita A. Laube, so used undue influence upon her father, the testator, as to induce him to execute a will which did not represent his real wishes, since it unjustly deprived his two grandchildren to a fair share in his estate. In my opinion, appellant has wholly failed to sustain this contention.

The circumstances surrounding the execution of this will are as follows: Testator, with almost one-half a century of service with the railroad company, had retired a year or so previously, and at the time of the death of his wife was living next door to his daughter's house. Although he was not very strong or well during the year preceding his death, he was not helpless or bed-ridden, nor was he confined to the house. His daughter treated him with affection and prepared his meals and otherwise cared for him from the time of the wife's death. He apparently brooded over his wife's death, and as has been stated, committed suicide, almost a year after his wife's death.

The will was executed some ten months before his death. According to the testimony of the scrivener of the will, testator had some time previously spoken to him about another matter and had stated that he wished to have his will drawn. Although the respondent was present at the preparation of the will, neither the scrivener nor the witnesses testified to anything indicating that testator was not in full possession of his faculties, nor that respondent used any pressure on the testator to secure the execution of the will. So far as appears from the testimony of those present, everything was normal and testator was doing exactly as he wished.

The burden is, of course, on the appellant to show undue influence. All of the witnesses for the appellant are either directly interested or related by blood. Their testimony, so far as it was relevant, was not very convincing, particularly so far as it related to statements that respondent had admitted that she had testator under her control and would see that the

grandchildren would be cut off. There was, undoubtedly, ill feeling between respondent on the one hand, and the grandchildren and their mother on the other, and they were not made welcome by respondent. However, it must be borne in mind that testator was not confined to the house, and testator at least saw them on the street on several occasions after his wife's death, but there was little or no evidence that his grandchildren paid him any particular attention or that he had any special love or affection for them.

On the part of the respondent, there is testimony by disinterested witnesses, including testator's doctor, to the effect that although he was feeble in body, his mind was clear, and he was rather a positive character. He tended to certain details of his business, such as taxes, up to within a few weeks of his death. He was not bed-ridden, but on the contrary, went freely out from the house.

The mere fact that the grandchildren might have had some reasonable expectation that they might receive a larger share of the estate, or the fact that the will might seem to be unjust or unfair, does not invalidate it. If the courts were to substitute their judgment of what a testator should do for his own wish, the opinion of the court would be substituted for that of the testator in every case, and the power to make a will would be abolished. To succeed in invalidating a will on the ground of undue influence, there must be shown weakness of mind, and that the desire of the testator was thwarted by the imposition of a stronger dominating influence. *Dale* v. *Dale, 38 N. J. Eq. 274.* The same case holds that mere confidential relations between the beneficiary and the testator could not raise a presumption against the validity of the gift. To a same effect is *Barker* v. *Streuli, 69 N. J. Eq. 771,* where the court says:

"To hold that such assistance as this son gave to his mother in the management of her business affairs is evidence of undue influence such as to destroy the testamentary disposition of property, would tend to the destruction of filial affection through fear of the charge of undue influence, should the parent by will bequeath a portion of his estate to a faithful child."

The general principles applying to suits of this character are set forth in *In re Eatley's Will, 82 N. J. Eq. 591* (at *p. 598*).

"While it may be so that the deceased made expressions of intended testamental disposition in favor of her daughter, yet we must not lose sight of the impressions of sincere appreciation which were unstintingly given by the beneficiary at a time when the deceased was most in need of them, and that in grateful recognition and partly as compensation they may have, and justly, furnished the motive for the selection of the sister instead of the daughter as the proper object of the deceased's bounty and qualifies the other that the will was one which the testatrix could not make consistent with the claims of duty or affection. It takes the will out of the class called 'inofficious testaments' and militates against the contention that it was not the spontaneous act of the deceased. We are not at liberty to destroy wills simply because they strike us as unjust. That is only a formidable circumstance in the consideration of the cause. 'The power of disposition belongs equally to the good and to the bad, and wills cannot be set aside merely because unequal or unjust. If capacity, formal execution, volition appear, the will of the most impious man must stand, unless there is something, not in the motives which led to the disposition, but in the actual disposition, against good morals or against public policy. It may be harsh and severe, it may be extremely cruel under some circumstances, to disinherit one child and to bestow the whole estate upon another, but if the testator be of disposing mind and memory, and duly execute such will in the forms prescribed by law, no court can interfere.' "

A decree will be advised affirming the decree of the Orphans Court confirming probate of the will.